IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

FEDERICK BURKS                                    PLAINTIFF

vs.                      4:06-cv-0000657-RSW

BEST BUY CO., INC.                                DEFENDANT

### Memorandum Opinion and Order

Defendant Best Buy Co., Inc. ("Best Buy") has moved for summary judgment on the Plaintiff's claim for employment discrimination (doc. #39).  Best Buy argues that Federick Burks ("Burks") cannot present evidence sufficient to meet the elements of his claim because he cannot establish that Best Buy discriminated against him on the basis of his race.  Burks filed a supplemental brief opposing the motion.  While the Court allowed Best Buy an opportunity to file a brief in response to this supplement, Best Buy declined to do so (doc. #58).  For reasons discussed below, the Court **GRANTS** the Defendant's motion.

I.   **Facts**

On May 6, 2001, Best Buy hired Federick Burks to work part-time as a Car-Fi Product Specialist in its North Little Rock, Arkansas store.  This position required Burks to respond to customer care needs, assist in achieving store goals, complete downstocking of product, and monitor product pricing and placement.  Burks was subsequently promoted to Car-Fi Product Specialist Supervisor, a full-time position, on July 22, 2001.

1

In addition to his previous responsibilities, Burks was given the tasks of ensuring adequate departmental staffing, overseeing employee performance, and training store personnel.

In 2003, Best Buy reorganized its retail store structure to consolidate job responsibilities. Burks' Car-Fi Product Specialist Supervisor position was restructured nationwide, as it was combined with another position. While Burks' employment was not terminated, he was demoted to the position of Video Department Product Specialist, and his salary correspondingly declined from $14.10 to $11.00 per hour. However, after four months, on July 20, 2003, Burks was promoted to Personal Computer/Home Office Product (PCHO) Supervisor.

In March 2004, Best Buy went through another company-wide reorganization, during which Burks' PCHO position was eliminated. The Company created the Team PC Area Manager (PCAM) position; however, while Burks was considered for the position, he ultimately was not selected. Instead, on March 28, 2004, Burks was demoted to the Counter Intelligence Agent (CIA) position.

Burks filed a Charge with the Equal Employment Opportunity Commission (EEOC) on August 3, 2004, alleging discrimination for Burks' 2004 demotion, which he claimed was due to his status as an African American. This Charge was dismissed by the EEOC on December 13, 2004. Burks did not bring suit within 90 days of this dismissal, however.

In the fall of 2005, Best Buy posted an opening for the PCAM position on its Job Opening System (JOS). Once again, Burks was considered and interviewed for the job, but was passed over in favor of Andrew Jones, who previously held the Home Office Customer Senior position. Jones' previous responsibilities included training company personnel, creating PC Department schedules, and conducting performance reviews. Burks admits that Jones was already satisfactorily performing the PCAM responsibilities prior to being selected for the position, although Burks was also responsible for these duties prior to Jones, and had even trained Jones in the PC Department. Burks also asserts that Best Buy company policy states that an employee must complete six months of employment in their current position before being eligible to apply for a new position.

Best Buy also posted the Deputy Counter Intelligence Agent (CIA) position in late September 2005. Best Buy claims the position was posted from September 24 to October 1. Burks claims he gave his application for the position to a sales manager on October 3, 2005. On October 11, 2005, Burks was told by Jennifer Jordan, who was conducting interviews for the position, that she would interview him after a managers' meeting. However, Jordan subsequently told Burks after the meeting that manager Toby Stephens would not allow her to conduct the interview because Robert McKay had already been offered the job.

Also at issue is Burks' compliance with Best Buy's Attendance/Punctuality policy.  Burks received Performance Counseling Records (PCR) for being late or missing work on December 16, 2001, June 18, 2002, June 3, 2003, January 16, 2004, and May 18, 2004, which occurred prior to Burks' August 3, 2004 EEOC Charge.  Burks does not claim these PCRs were due to his race.  This is also true of two PCRs Burks received after filing his first Charge, which were received on August 18, 2004, and June 26, 2005.

However, on November 9, 2005, Burks filed his second EEOC Charge against Best Buy alleging race discrimination for failure to promote in both the PCAM and the CIA positions.  The EEOC sent a copy of the Charge to Best Buy on November 15, 2005, which was addressed to Stephens.  Burks claims he saw Lance Goodwin, then acting manager, receive the Charge in the mail.  The Charge informed Best Buy that it had until December 16, 2005 to reply.

Following this second Charge, Burks was given a PCR on November 26, 2005 for arriving to work two hours late.  Burks believes this PCR was given due to the Charge he filed, and he stated that other employees, such as a white man named Brandon Aguilar, were late for work and did not receive a PCR.  Burks received another PCR after being approximately a half-hour late on November 29, 2005.  Then, on December 4, 2005, Burks failed to show up for work because he claimed he was unaware he was

4

scheduled to work.  Best Buy suspended Burks' employment for two weeks, which Burks claims was in contravention of Best Buy's discipline policy.  Burks then amended his EEOC Charge on December 15, 2005, to reflect the PCRs he was given on November 26 and November 29, as well as his suspension on December 4.

When Burks' suspension ended on December 21, 2005, Stephens issued a final warning PCR for Burks' failure to show up for work on December 4.  Burks was warned that if he was late to work again, his employment would be terminated.  On December 27, 2005, Burks called Jordan three minutes before his shift was to begin to inform her that he would be late.  He arrived approximately twenty minutes after his shift was scheduled to start.  Stephens informed Burks on December 28, 2005 that his employment was suspended.  After meeting with Stephens and Jordan on January 4, 2006, Burks was told his employment was terminated due to his violations of Best Buy's Attendance/Punctuality policy.

## II.  Discussion

### A.  Summary Judgement Standard

"Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Loeb v. Best Buy Co., Inc., 537 F.3d 867, 871 (8th Cir. 2008).  Summary judgment should seldom be granted in employment discrimination cases because the intent is often based on inference.  Peterson v. Scott County, 406 F.3d 515, 520

(8th Cir. 2005).  However, "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff," and accordingly, the plaintiff "may not merely point to unsupported self-serving allegations."  Smith v. International Paper Co., 523 F.3d 845, 848 (8th Cir. 2008).

Race discrimination claims are analyzed under the familiar burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under that framework, the plaintiff must first establish a prima facie case of racial discrimination. McDonnell Douglas, 411 U.S. at 802.  The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for taking action against the employee.  Id.  Once the employer articulates a legitimate reason, "the presumption of discrimination disappears entirely and the plaintiff bears the burden of proving that the employer's proffered reason is merely a pretext for discriminatory animus."  Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1107 (8th Cir. 1998).  Thus, the ultimate burden of proving discrimination at all times remains with the plaintiff.  Id. at 1107-08.

**B.   Failure-to-Promote Claims**

Under a failure-to-promote claim, a plaintiff establishes a prima facie case by showing: (1) that he was a member of a

protected group; (2) that he was qualified and applied for a promotion to an available position; (3) that he was rejected; and (4) that a similarly qualified employee, who was not a member of a protected group, was promoted instead.[1]  <u>Id.</u> at 1109.

### 1.  Deputy CIA Supervisor Position

Best Buy claims that Burks did not apply for the Deputy CIA position within the posted dates, and when he attempted to submit an application, the position was already filled.  Toby Stevens, the manager who hired the position, stated in his affidavit that the job was posted from September 24 to October 1, 2005.  Thus, Best Buy argues that Burks cannot meet the second element of his prima facie case because he did not apply before October 1, when the posting closed, or even before October 9, when the position was filled.  Burks counters that he applied on October 3 by providing his application to Dustin, a sales manager, with the understanding that it would be given to the hiring manager. Burks also states that he spoke with Jennifer Jordan on October 11 regarding an interview for the position.  She initially told Burks he would be interviewed, but after a managers' meeting, she informed him that the job was already filled.

---

[1]  Burks is proceeding under Title VII of the Civil Rights Act and 42 U.S.C. § 1981.  The elements of a discrimination claim are the same under each of these actions.  <u>Saulsberry v. St. Mary's Univ. of Minn.</u>, 318 F.3d 862, 866 (8th Cir. 2003).

Burks contends that whether he applied for the position is a question of fact.  However, the factual dispute over whether Burks applied on the 3rd or the 10th of October appears to be immaterial to meeting the element.  The closing date of the job posting was October 1, and thus the application, even if received on the 3rd, would not be valid after that point.  It is clearly an "unremarkable proposition" that in order to be held liable for race discrimination for failing to promote Burks to the CIA position, "that position must have been available at the time [the employee] applied for it."  Pierce v. F.R. Tripler & Co., 955 F.3d 820, 824 (2d Cir. 1992).  The application itself that Burks signed, which is dated the 3rd, states immediately under the signature line that the hiring manager must receive the application no later than the closing date of the job posting. Thus, even if Burks did submit the application on October 3, it was already past the job closing date of October 1.  Robert McKay, who was hired for the position, submitted his application on September 30, within the posted dates.  Thus, Burks did not apply for an available position as required by the second element of a failure-to-promote claim.  Furthermore, even if Burks did meet his prima facie case, there is no evidence that McKay was selected because of racial discrimination toward Burks, and thus there is no evidence of pretext.  The Court accordingly **GRANTS** Best Buy's summary judgment motion on this claim.

8

## 2.    Team PC Area Manager Position

Burks also asserts Best Buy discriminated against him when it did not promote him to the PC Area Manager (PCAM) position. Best Buy argues that Burks was not the most qualified candidate for the PCAM position and thus he cannot meet the fourth element of his prima facie case. Rather, Andy Jones, who was hired for the position, was more qualified because he was already performing most of the duties of the PCAM position. Burks replies that he trained Jones, in addition to performing many of the managerial job duties encompassed by the PCAM position. Burks also provides evidence that he scored higher on performance appraisals than Jones, although Best Buy asserts that the hiring for the 2005 position was not based on these appraisals, but rather on interviews and experience (contrary to the 2004 position, which was based on appraisals).

"At the prima facie stage, the plaintiff's burden - showing she is similarly situated to other employees - is not onerous." Peterson, 406 F.3d at 522. The Court assumes that Burks can meet his prima facie case with respect to the hiring of the PCAM position. However, Burks' relative qualifications and experience are more relevant to the issue of pretext. Id. at 523.

"It is well-established that the employment discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness

9

of the business judgments made by employers, except to the extent those judgments involve intentional discrimination." Grabovac v. Allstate Ins. Co., 426 F.3d 951, 955 (8th Cir. 2005) (internal citation omitted). The Court may examine whether an employer promoted an individual who was substantially less qualified than an applicant in the protected class, which may provide an inference of discrimination. Peterson, 406 F.3d at 523.

The Court has no reason, nor ability at the summary judgment stage, to disbelieve Burks' aptitude for the position. This much is clear in the Court's assumption that Burks can meet his prima facie case because the second element addresses whether the plaintiff was qualified. Rose-Maston, 133 F.3d at 1109.

However, Burks fails to show that Jones was substantially less qualified than himself for the position. Instead, Burks admits in his deposition that he is not contending he was more qualified than Jones (doc. #46, Exhibit 1). Burks further acknowledges that Jones had performed many of the PCAM responsibilities before being promoted and Jones had conducted training and performance evaluations with PC department members (doc. #46, Exhibit 1). Clearly, Burks cannot show Jones was substantially less qualified when he admits that Jones was already performing many of the job duties, and that he was not contending that he was more qualified than Jones. While Burks stresses his own qualifications, he fails to provide any evidence

of discrimination from Best Buy in hiring Jones, who was also qualified for the job.  The comparison between Burks and Jones merely reveals that the two were similarly qualified, and this does not raise an inference of racial discrimination.  <u>Chock v. Northwest Airlines, Inc.</u>, 113 F.3d 861, 864 (8th Cir. 1997).  <u>See also</u> <u>Lidge-Myrtil v. Deere & Co.</u>, 49 F.3d 1308, 1311 (8th Cir. 1995) ("The mere existence of comparable qualifications between two applicants . . . alone does not raise an inference of racial discrimination").

Burks also emphasizes that both Jones and McKay had not been in their full-time position for six months before being promoted, which he claims contradicts Best Buy policy.  Burks provides as further support an affidavit from Darnell Walker, an African-American Best Buy employee who claims he was told he could not apply for the Home Theater Manager's position because he had not been in his position for at least six months.  Burks asserts that Best Buy's violation of its own policies provides evidence of discrimination, despite Best Buy claiming that this policy was not in place at the relevant time.

While the parties debated vigorously whether the six-month policy was in place at the time of Burks' experience, the Court does not find the outcome of this debate to be determinative.  The Court recognizes that "an employer's deviation from its own policies can, in some instances, provide evidence of pretext."

11

Russell v. TG Missouri Corp., 340 F.3d 735, 746 (8th Cir. 2003).

In this case, however, while it may be true that Best Buy did not

strictly enforce their six-month policy (which the Court assumes

to be in place), Burks presents no evidence that this deviation

occurred because of racial discrimination.  See Chock, 113 F.3d

at 861 (upholding district court's determination that there was

no evidence of racial discrimination where company deviated from

its policy of promoting candidates who had completed one year in

their current positions); Gilbert v. Des Moines Area Cmty Coll.,

495 F.3d 906, 916 (8th Cir. 2007) (holding that the employer's

legitimate, nondiscriminatory reasons contradicted the claim that

the deviation from the policy occurred based on racial

discrimination).  Walker's affidavit does not provide evidence

that *Burks* was discriminated against because it relies on the

same inferences regarding the six-month policy which fail to show

any discriminatory intent.  Moreover, the inconsistent

application of the policy seems more related to the fact that

Burks and Walker reported to different managers, who were charged

with enforcing any policies in place, rather than racial

discrimination as Burks claims.

　　Best Buy articulated legitimate, nondiscriminatory reasons

for hiring both McKay and Jones.  The Court does not sit to

determine whether these reasons are based on sound principles of

business judgment.  Lidge-Myrtil, 49 F.3d at 1312.  Rather, the

12

relevant inquiry is whether Best Buy's decision was based on race.  Id.  Reviewing the record as a whole, Burks is unable to show a genuine issue of fact with respect to his "ultimate burden of proving discriminatory intent."  Id.  Accordingly, the Court **GRANTS** Best Buy's summary judgment motion with respect to the PCAM position.

### C.   Race Discrimination Claims Based on Demotions

Best Buy next argues that Burks' discrimination claims based on his demotions should be dismissed.  First, Best Buy argues Burks has not exhausted his administrative remedies with respect to his 2003 demotion, which is required by Title VII before bringing a case in federal court.  Cottrill v. MFA, Inc., 443 F.3d 629, 634 (8th Cir. 2006).  Burks' EEOC matter did not address that specific demotion.  Secondly, Best Buy claims Burks is barred by the statute of limitations because Title VII claims must be filed within 90 days of the EEOC's right-to-sue letter. Since Burks' letter was dated December 13, 2004, he would have had until approximately March 17, 2005 to bring a claim, but he did not bring suit on his demotion claims until June 7, 2006, some 18 months later.

"A claimant must first timely file an administrative charge with the EEOC."  Id.  The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  Id. (citing 29 C.F.R. § 1601.12(b)).

13

Here, Burks did not file his EEOC charge until August 3, 2004, and this charge concerned only the 2004 demotion.  Thus, Burks has not exhausted his administrative remedies.

Furthermore, "If the EEOC gives the individual a right-to-sue letter following the EEOC investigation, the charge limits the scope of the subsequent civil action because the plaintiff may only seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge."  Id. (internal citation omitted).  Title VII actions must be brought within 90 days after the plaintiff receives notice of the right to sue.  Garrison v. Int'l Paper Co., 714 F.2d 757, 759 n.2 (8th Cir. 1983).  In this case, Burks did not bring suit on his demotion claims until 18 months after the EEOC's right-to-sue letter.  Thus, he did not meet the statute of limitations required for Title VII claims.

Even assuming that Burks did exhaust his remedies and meet the statute of limitations, the demotion claims should still be dismissed on the merits.  To establish a prima facie case of discrimination in a reduction-in-force context under Title VII and Section 1981, Burks must show: (1) he was a member of a protected group; (2) he met applicable job qualifications; (3) he was discharged; and (4) he must produce some additional evidence that race was a factor in his termination.  Herrero v. St. Louis Univ. Hosp., 109 F.3d 481, 483 (8th Cir. 1997).

14

Burks provided no arguments related to the demotion claims in his response or supplemental briefs.  But the matter has been addressed clearly by case law.  In a recent Eighth Circuit opinion, the Court affirmed the grant of summary judgment in an age discrimination case against Best Buy where the company's proffered nondiscriminatory reason was the shifting of job functions to different departments.  <u>Loeb</u>, 537 F.3d at 872. Other cases have made it clear that a reduction in force "certainly constitutes" a legitimate, nondiscriminatory reason. <u>Wells v. SCI Mgmt., L.P.</u>, 469 F.3d 697, 702 (8th Cir. 2006).  <u>See also</u> <u>Regel v. K-Mart Corp.</u>, 190 F.3d 876, 879 (8th Cir. 1999) ("A company's exercise of its business judgment [to implement a reduction in force] is not a proper subject for judicial oversight").

It is clear that, even assuming Burks can meet his prima facie case, his claim must fail because there is no evidence that Best Buy's company-wide reorganizations were done with any discriminatory intent.  This is particularly true when considering Best Buy's actions during both reorganizations.  In 2003, Burks was demoted for only four months, after which he was promoted back to a supervisory position where he made more money than he did prior to the demotion.  In 2004, the reorganization resulted in the elimination of his position and another, and the PCAM position was created.  He was considered for this position

along with two Caucasians, but none of the three were chosen, and each subsequently was offered and took other positions.  Burks has failed to show that Best Buy's company-wide reorganizations were pretext for discrimination, and the Court thus **GRANTS** Best Buy's summary judgment motion on the demotion claims.

### D.   Retaliation Claim

Lastly, Best Buy has moved for summary judgment on Burks' retaliation claim.  First, Best Buy claims Burks has not exhausted his administrative remedies on the December 21, 2005 PCR, the December 28, 2005 suspension, or the January 4, 2006 termination.  Burks admits he did not file additional claims with the EEOC after these disciplinary actions were issued, but he claims he is within the three-year statute of limitations established for Section 1981 actions.  The United States Supreme Court recently held that Section 1981 encompasses retaliation claims, despite the overlap in certain procedural and administrative requirements in Title VII that Section 1981 does not contain, such as filing suit within 90 days of obtaining an EEOC right-to-sue letter.  CBOCS West, Inc. v. Humphries, 128 S. Ct.. 1951, 1959-60 (2008).  The Court assumes for purposes of this claim that Burks' claim is timely.

To establish a prima facie case of retaliation, Burks must show he engaged in protected conduct, the employer treated him in a manner that a reasonable employee would find materially

16

adverse, and there was a causal connection between the adverse employment action and the protected conduct.  <u>Van Horn v. Best Buy Stores, L.P.</u>, 526 F.3d 1144, 1147 (8th Cir. 2008).  "To make out a retaliation claim, the plaintiff must show that the protected conduct was a determinative - not merely motivating - factor in the employer's adverse employment decision."  <u>Id.</u> at 1148 (internal citation omitted).

Best Buy argues that Burks cannot show the third element — that there is a causal connection between his protected conduct and the adverse employment action.  According to Best Buy, Burks must show that the decision makers who disciplined him knew of the EEOC claim, and he has no such evidence.  While Best Buy strongly disputes whether its managers knew of the EEOC Charge prior to the adverse employment actions, the Court assumes they did have knowledge because the letter Burks saw was addressed to Stephens, and more importantly, because Best Buy responded to the letter by December 15, prior to the actions on December 21 and January 4.  Clearly they had knowledge of the Charge by that point because they officially responded to it.

Burks' causation argument relies largely upon the timing between the EEOC Charge and the disciplinary steps taken by Best Buy as evidence of an inference of discrimination.  "An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events, but

17

in general more than a temporal connection is required to present a genuine factual issue on retaliation." <u>Peterson</u>, 406 F.3d at 524.  The Eighth Circuit recently stated, in a case involving Best Buy nonetheless, that although "in rare circumstances an adverse action may follow so closely upon protected conduct as to justify an inference of a causal connection between the two, . . . an interval of two months is too long to support such an inference." <u>Van Horn</u>, 526 F.3d at 1149.  The plaintiff in that case failed to show a prima facie case of retaliation because the evidence did not support a reasonable inference, "as opposed to a speculative guess," that the two acts of protected conduct were "a determinative factor, not merely a motivating factor," in the employer's decision.  <u>Id.</u> at 1150.  The Eighth Circuit has previously ruled, however, that a two-week period from the protected activity to a termination is close enough to establish causation in a prima facie case.  <u>Peterson</u>, 406 F.3d at 525

In this case, approximately two months elapsed between the filing of the Charge on November 9, 2005, and Burks' termination on January 4, 2006.  However, Burks was given a PCR on November 26, 2005, just over two weeks after the filing of the Charge. While receiving a PCR is not as severe as the subsequent termination, the Court assumes it is sufficiently adverse for purposes of Burks' prima facie case.

The Court declines to determine whether temporal proximity

18

alone would create an inference of a causal connection, however, because Burks' argument fails at the pretext stage.  Stuart v. General Motors Corp., 217 F.3d 621, 635-36 (8th Cir. 2000).  In meeting its burden, Best Buy has produced a legitimate nondiscriminatory reason for disciplining and terminating Burks - the multiple times he violated the company's Attendance/ Punctuality policy, which lays out the grounds for reporting to work on time and discipline for noncompliance.  While he violated this policy prior to his EEOC claim and was disciplined then, he incurred four violations in one month after filing his claim.  "The core question in a retaliation case does not, ultimately, concern the veracity of the facts underlying an employer's legitimate non-discriminatory reason for discharging its employee, but rather concerns whether the employment decision was based upon intentional discrimination."  Id. at 637.  Burks fails to establish that Best Buy's legitimate reason is false and a pretext for retaliation.

Instead, Burks claims that Best Buy violated its own policies by issuing disciplinary steps in a manner contrary to their progressive-step policy.  The policy states that if the employee is tardy or absent more than two times in a rolling three month period, the manager may have a counseling session with the employee.  Subsequent tardiness or absences may lead to further discipline, up to and including termination.  When Burks

was issued a written warning on November 26, 2005, he had not
been late or absent within a rolling three month period.[2]

However, even if this is true and Best Buy "misapplied its
own policy . . . that alone does not constitute evidence of
discrimination." Richey v. City of Independence, _ F.3d _, 2008
WL 4058099, at *6.  Whether Burks received a PCR, a counseling
session, or other disciplinary measures, the fact still remains
that Burks was late for work, or completely absent, on multiple
occasions.  Simply because he engaged in protected conduct by
filing his EEOC Charge does not insulate him from Best Buy's
adverse action for violating workplace rules.  Id. at *4 ("The
relevant inquiry is whether the employer *believed* the employee
was guilty of the conduct justifying discharge").  Best Buy has a
right to choose how to run its own business, including the
policies it sets, so long as it does not unlawfully discriminate
in doing so.  Id. at *6.

Burks' argument is further undercut by the fact that Best
Buy disciplined him in similar manner prior to the filing of his
EEOC Charge.  He received multiple PCRs in prior years for being
late or missing work, in the same manner as he did after the
Charge was filed.  The Court agrees with Best Buy that it was not

---

[2] Best Buy disagrees regarding Burks' characterizations of
their policy.  Best Buy claims they do not have a progressive
step policy.  Rather, the employee may be disciplined by multiple
methods in response to violations.

Best Buy's concern for attendance and punctuality that changed after the Charge was filed, but rather the frequency of misconduct by Burks.

Once again, "In deciding whether an issue of material fact exists that would prevent the entry of summary judgment, [the court is] mindful that [it does] not sit as a super-personnel department to review the wisdom or fairness' of Best Buy's decision to terminate [the plaintiff]."  <u>Loeb</u>, 2008 WL 3166186, at *3.  The ultimate burden falls on Burks to produce sufficient evidence showing a genuine issue of material fact regarding whether Best Buy's proffered nondiscriminatory reasons are mere pretext for intentional discrimination.  <u>Montes v. Greater Twin Cities Youth Symphonies</u>, _ F.3d _, 2008 WL 3927231, at *5 (8th Cir. 2008) ("The burden-shifting framework is merely an analytical construct; the ultimate burden of proving discrimination remains at all times with [the plaintiff]") (internal citation omitted).  Burks fails to meet this burden because he provides no evidence that Best Buy disciplined him for anything other than being late and missing work, which are completely legitimate reasons for any employer to act.  Accordingly, the Court **GRANTS** Best Buy's summary judgment motion on the retaliation claim.

## III. Conclusion

Assuming Burks has met his prima facie case establishing

discrimination, Best Buy produced legitimate, nondiscriminatory reasons sufficiently meeting its burden under the McDonnell Douglas framework.  Burks has failed to show that these reasons are mere pretext for intentional discrimination.  The Court thus **GRANTS** Best Buy's motion for summary judgment on all claims.

**IT IS SO ORDERED.**

Dated this 22nd day of September, 2008.



RODNEY S. WEBB, District Judge
United States District Court